VICTOR SHERMAN (SBN: 38483)
LAW OFFICES OF VICTOR SHERMAN
11400 West Olympic Boulevard, Suite 1500
Los Angeles, California 90064
Telephone: (424) 371-5930
Facsimile: (310) 392-9029
Email: victor@victorsherman.law

Attorney for Defendant
JAMAL NATHAN DAWOOD

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 23-cr-00038-JVS |
| Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THOMAS BATTAGLIA'S DEPOSITION TESTIMONY; EXHIBIT** |
| v. | |
| JAMAL NATHAN DAWOOD, | |
| Defendant. | |

### Introduction

The law is clear, and the facts are undisputed.  Taken together, they compel the conclusion that ninety minutes was not constitutionally sufficient to allow for a full and fair cross-examination of the government's principal witness in this complex, paper-heavy fraud case.

Beginning with the relevant law, the Sixth Amendment safeguards the defendant's – not the government's – right to cross-examination.  It requires that "the defense is given a *full and fair* opportunity to probe and expose [the witness's reliability, credibility, and bias] thereby calling to the attention of the factfinder the reasons for giving scant weight

to the witness' testimony." *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985).[1]  Given the fundamental nature of this Sixth Amendment right, the Ninth Circuit has "emphasized the policy favoring expansive witness cross-examination in criminal trials." *United States v. Cazares*, 788 F.3d 956, 983 (9th Cir. 2015).

Moving to the facts, the indictment in this case contains 15 counts.  Each count is tied to a different transaction or series of transactions, and each of those transactions involves multiple contracts and related documents signed or received by Mr. Battaglia. Thus, as defense counsel consistently told the government before and during the deposition, the ninety minutes allotted did not provide sufficient time to cross-examine Mr. Battaglia fully and fairly about most of these documents, which would have materially impacted the jury's ability to assess his reliability, credibility, and bias.

Accordingly, admission of Mr. Battaglia's deposition testimony would violate Mr. Dawood's Sixth Amendment right to confrontation.

## Discussion

### A.    The government's arguments are misplaced.

In its response, the government largely glosses over the relevant law and seeks to minimize the complexity of this case.  It says: "The question posed by this case is simple: did defendant have Mr. Battaglia's authorization to transfer money from the trust account into defendant's own accounts, keep it, and spend it for his own purposes, or did defendant take that money from Mr. Battaglia through fraudulent promises, misstatements, and omissions?" ECF. 26 at 8.  By framing the issue in this way, the government seeks to convince the Court that this case is uncomplicated, and thus, a mere 90 minutes provided a sufficient opportunity to cross-examine its main witness.

But this is not a simple single-count case, like a border bust where the only issue

---

[1] Unless otherwise noted, all internal quotation marks and citations are omitted, and all emphasis is added.

is whether the defendant knew about the drugs hidden in the spare tire. To the contrary, as noted, there are 15 different fraud-related charges that the jury must consider individually based on the documents related to each transaction and the relevant testimony about those transactions. To this end, the jury will be instructed, "A separate crime is charged against the defendant in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." Ninth Circuit Manual of Model Jury Instructions, Criminal, 6.11.

The trial, therefore, will not be an all-or-nothing proposition. The jury, for example, could conclude that certain transactions were authorized and others were not. For this reason, it is critical to Mr. Dawood's Sixth Amendment rights that be afforded a sufficient opportunity to cross-examine Mr. Battaglia about *all* the transactions underlying each count. Plainly, however, that did not happen during the ninety minutes allotted. And the sole published case relied on by the government proves the point.

The government cites *Fenenbock v. Director of Corrections for California*, 692 F.3d 910, 919 (9th Cir. 2012), for the proposition that "Courts have repeatedly upheld similar limits on cross-examination." ECF 26 at 99. But in *Fenenbock*, the trial court placed a limit of **7 hours** on the cross-examination. *See* 629 F.3d at 920. The Ninth Circuit explained, "Petitioner presents no cogent explanation as to why the time used by his defense counsel at trial (about three hours) plus the unused four hours offered by the trial court would not have sufficed to explore the intended material exhaustively." *Id.* The Court continued that it did not see why counsel needed more time "to cover four hundred pages of discovery." *Id.*

Here, by contrast, Mr. Dawood was given just 90 minutes to cover over 8,500 pages of discovery. Thus, in comparison, *Fenenbock* strongly supports Mr. Dawood's position. And this is also true because, in this case, Mr. Dawood has provided a "cogent explanation as to why the time [given to] his defense counsel . . . [c]ould not have sufficed to explore the intended material exhaustively." *Id.*

Specifically, in his moving papers, Mr. Dawood explained that, during his allotted time, defense counsel was able to begin his cross-examination and cover matters related to the beginning of Mr. Battaglia's relationship with Mr. Dawood.   But there was insufficient time to probe Mr. Battaglia's biases, prejudices, and motives for his allegations against Mr. Dawood.   More specifically, defense counsel was unable to cross-examine using the numerous documents, wire-transfer records, emails, and other materials demonstrating that, contrary to his direct testimony, Mr. Battaglia knew about and approved.  In other words, Mr. Dawood did not have a full and fair opportunity to impeach Mr. Battaglia on the most critical point for the defense – i.e., that Mr. Dawood always acted with Mr. Battaglia's knowledge and permission.

On pages 14-15 of his motion, and in counsel's declaration, Mr. Dawood provided multiple specific examples demonstrating how and why counsel needed additional time to conduct a meaningful cross-examination.  He now supplements those examples with a further discussion of particular documents and areas of cross-examination that counsel was unable to pursue due to the time limitation.  Because the Court has not yet heard the evidence that would explain these documents' significance in the context of the overall case, Mr. Dawood provides a brief overview.

**B.    Specific examples demonstrating that the 90 minutes did not suffice under the Sixth Amendment.**

The documents discussed below relate to the transactions forming the basis of specific counts.  If counsel had sufficient time, they would have been used for the same basic purpose – to test Mr. Battaglia's assertions (and the government's theory of the case) that he did not know about or authorize the transactions forming the basis for each substantive count.

By way of analogy, posit a scenario in which an alleged fraud victim testifies on direct that he did not approve a specific transfer from his account.  On cross-examination, the defense would use documents signed by, or sent to, the alleged victim related to that

transfer to impeach the direct testimony.  It would then be up to the jury to evaluate the alleged victim's credibility based on his answers to the questions about the documents he signed.  That is what Mr. Dawood intended to do here, but the 90-minutes allotted barely allowed him to barely scratch the surface, as the following demonstrates:

Beginning with counts one and two.  Count 1 charges that, on September 9, 2019, there was a wire transfer in the amount of $731,989.65 from the Jack J. Battaglia Trust ("Trust Account") to a Bank of America account ending in 1861, an account in the name of TD Capital.  Count 2 charges the transfer of $654,063.80 from the Trust Account to a Bank of America account ending in 6050, in the name of Globe Design.

During his deposition, Mr. Battaglia denied knowledge of these transfers.

This testimony, however, is impeached by the Profit Sharing Agreement, attached as Exhibit A to Mr. Dawood's moving papers.  That agreement was signed by Mr. Battaglia and Mr. Dawood.  It strongly suggests that the transfers charged in counts 1 and 2 were indeed part of the parties' agreement.  And it further supports the defense argument that the Mr. Battaglia knowingly agreed to fund and advance a total sum of $731,989.65 (the amount charged in count 1).

Similarly, attached as Exhibit B to the motion was the Agreement for Sale of Membership Interest.  This was also signed by Mr. Battaglia and Mr. Dawood.  In this agreement, Mr. Dawood agreed to sell a 49% share in Globe Design Build to the Battaglia trust for $654,063.80, the exact amount of money referenced in Count 2 of the indictment.  Thus, contrary to Mr. Battaglia's testimony at the deposition, the document shows he was fully aware that the monies referred to in Count 2 were for a 49% interest in Globe Design.

Mr. Dawood, however, did not have sufficient time to question Mr. Battaglia about either of these documents.  This is important because, given his signature, Mr. Battaglia would have had to admit that he authorized the transactions in counts 1 and 2, or deny knowledge of the documents.  If the former, it would have been exculpatory on its face.  If the latter, it would have been material to the jury's assessment of his credibility.  As

such, this was an important area of cross-examination that surely would have been permitted during a trial.

There are myriad other examples.

In counts 3 through 6, for instance, the indictment alleges that various sums were transferred from the trust account to accounts controlled by Mr. Dawood or other individuals with whom he had personal relationships. However, Exhibit C to the motion contains various documents tending to show that Mr. Battaglia was fully aware of these transfers and that they were all made with his consent.

These documents support the defense theory that all the charged transactions were completed with Mr. Battaglia's knowledge and consent. Due to time restraints, however, counsel was unable to cross-examine Mr. Battaglia using these exhibits. Again, a jury would want to know how Mr. Battaglia would respond to these documents as to which he was a signatory.

The list goes on. Exhibits D and E show that Mr. Battaglia signed off on the sale of the subject residence for $744,358.00. Indeed, as part of Exhibit E, Mr. Battaglia emailed Mr. Dawood and told him he wanted to sell the property. This document, therefore, would have been used to impeach Mr. Battaglia's deposition testimony that he was unaware that the property had been transferred. But counsel did not have an opportunity to cross-examine Mr. Battaglia about this email before his time ran out.

Nor did Mr. Dawood have a chance to impeach Mr. Battaglia with his prior testimony in a civil deposition related to the same allegations underlying this prosecution. A copy of this deposition is attached as Exhibit I and incorporated herein by reference. (Exhibits A through H were previously filed as part of Defendant's Motion to Exclude T.B.'s Deposition Testimony Doc. #25).

In many respects, Mr. Battaglia's testimony in the civil deposition was inconsistent with his claims during the criminal deposition. If counsel had the time he would have used the civil deposition to show that, contrary to his testimony during the government's

direct examination: (1) Mr. Battaglia had previously admitted knowing all about his brother's trust; (2) that he was lying about his ownership of the Aquamarina property; (3) that the trusts were prepared by the same attorneys; (4) that he had a copy of the trust within days of his brother's death; and (5) very importantly, that he never gave a copy of the Amended Trust to the government or any of the named beneficiaries in order to conceal his unlawful intent to embezzle his brother's Trust Assets, which were bequeathed to others.

Learning about these prior inconsistent statements made under oath during his civil deposition would have been key to the jury's assessment of Mr. Battaglia's veracity.

Moving on, Exhibit F relates to the Hawaii Properties. Mr. Battaglia testified he did not know about any sale of these properties. But all the relevant real estate transfer documents were either initiated or signed by Mr. Battaglia. Thus, if he had sufficient time, Mr. Dawood would have used them on cross-examination to impeach Mr. Battaglia's claims.

Similarly, during the government's direct examination, Mr. Battaglia testified that he went with the Mr. Dawood to a Bank of America branch in San Clemente to open a bank account for the Trust. Mr. Battaglia claimed that the money in this account was specifically for him and no one else. Mr. Battaglia further maintained, and the government has alleged, that Mr. Dawood made at least six wire transfers from the trust account totaling over 1.4 million dollars, into accounts that the defendant controlled without Mr. Battaglia's knowledge.

At the deposition, counsel did not have enough time to question Mr. Battaglia about the fact that he signed agreements authorizing these wire transfers and that the wire transfers *could not have been completed without the personal initiation and confirmation of the wires by Mr. Battaglia*. Indeed, there is evidence that before any of the subject transfers took place, a representative of Bank of America called Mr. Battaglia to confirm the wire transfers, which was the only way that the wires could have been approved. But

again, counsel did not have time to cross-examine Mr. Battaglia about this fact.

Mr. Dawood could go on and on. But the point is clear. Given the complexity of this case and the numerous transactions at issue, ninety minutes was simply insufficient to protect Mr. Dawood's Sixth Amendment Rights. Although the government tries to distract from this fact, its arguments are unavailing. The government focuses on the uncontroversial proposition that district courts have discretion to limit cross-examination. But that discretion is, of course, constrained by the Constitution.

As the Ninth Circuit has clearly held, "while a district court has discretion to limit cross-examination, it may not impose restrictions that limit[] relevant testimony and prejudice[] the defendant." *United States v. Wilmore*, 381 F.3d 868, 873 (9th Cir. 2004). Thus,"[i]f a line of cross-examination is relevant [] *it must be allowed*[.]" *United States v. Bensimon*, 172 F.3d 1121, 1128 (9th Cir. 1999).

For this reason, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed . . . to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Fowler v. Sacramento County Sheriff's Dep't*, 421 F.3d 1027, 1035 (9th Cir. 2005) (ellipses in original). Here, for all the reasons discussed herein and in his original motion, the ninety-minute time limit precluded Mr. Dawood from engaging in appropriate cross-examination designed to test Mr. Battaglia's credibility and reliability. This Court, therefore, should exclude the deposition testimony.

Respectfully submitted,

Dated: February 20, 2024

/s/ *Victor Sherman*
VICTOR SHERMAN
Attorney for Defendant

8